UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-350-GWU

R. K. HOSKINS,                                                                    PLAINTIFF,

VS.                                  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                              DEFENDANT.

**INTRODUCTION**

R. K. Hoskins has filed several applications for Disability Insurance Benefits
(DIB) and Supplemental Security Income (SSI) benefits, all without success at the
administrative level. Currently before the court is the Commissioner's denial of his
March 26, 2002 application for SSI benefits.  After a period of reconsideration
prompted by the undersigned's memorandum opinion, order, and judgment of
November 30, 2005, Hoskins v. Barnhart, London Civil Action No. 05-10-GWU (E.D.
Ky.) (Tr. 519-28), during which a July 12, 2004 application for SSI was consolidated
with the 2002 application, the case is once again before the court on cross-motions
for summary judgment.

**APPLICABLE LAW**

Review of the Commissioner's decision is limited in scope to determining
whether the findings of fact made are supported by substantial evidence. Jones v.
Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

06-350  Hoskins

1991); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 855 (6th

Cir. 1990).  This "substantial evidence" is "such evidence as a reasonable mind

shall accept as adequate to support a conclusion;" it is based on the record as a

whole and must take into account whatever in the record fairly detracts from its

weight.  Crouch, 909 F.2d at 855.

The regulations outline a five-step analysis for evaluating disability claims.

See 20 C.F.R. Section 404.1520.

The step referring to the existence of a "severe" impairment has been held

to be a de minimis hurdle in the disability determination process.  Murphy v.

Secretary of Health and Human Services, 801 F.2d 182, 185 (6th Cir. 1986).  An

impairment can be considered not severe only if it is a "slight abnormality that

minimally affects work ability regardless of age, education, and experience."  Farris

v. Secretary of Health and Human Services, 773 F.2d 85, 90 (6th Cir. 1985).

Essentially, the severity requirements may be used to weed out claims that are

"totally groundless."  Id., n.1.

Step four refers to the ability to return to one's past relevant category of work,

the plaintiff is said to make out a prima facie case by proving that he or she is

unable to return to work.  Cf. Lashley v. Secretary of Health and Human Services,

708 F.2d 1048, 1053 (6th Cir. 1983).  Once the case is made, however, if the

Commissioner has failed to properly prove that there is work in the national

economy which the plaintiff can perform, then an award of benefits may, under

certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human

Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 CFR 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely

using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The court noted in its previous decision that, because prior denials of previous applications had become final, "the pertinent inquiry for SSI purposes is whether the plaintiff was disabled on or after the March, 2002 date of filing of the current SSI application." (Tr. 527). The decision was remanded for further consideration because the opinion of the plaintiff's treating physician, Dr. Glen Baker, was not properly discounted by any medical source. (Tr. 528). One source, Dr. Hughes Helm, was not properly licensed at the time he examined Mr. Hoskins, and another source, Dr. A. Dahhan, had previously been used as expert witness against the plaintiff in a worker's compensation case. (Id.).

On remand, the ALJ obtained additional testimony from the plaintiff, consultative physical and psychiatric evaluations, and additional opinions from state agency reviewing sources. However, following the holding of Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997), the ALJ determined

4

that there was no evidence that the plaintiff's condition had worsened since a prior, final ALJ denial decision of July 16, 2001 (Tr. 92-102), which had, in turn, been affirmed by this court on July 31, 2003 (Tr. 133-42, 504-13).  Therefore, the ALJ stated that, while the plaintiff had "severe" impairments consisting of coal worker's pneumoconiosis, mild chronic obstructive pulmonary disease, a history of bronchial asthma, and a history of panic disorder (Tr. 438), he nevertheless retained the residual functional capacity to perform "light" level exertion with sitting no more than 2 hours in an eight-hour day, and standing and walking six hours in an eight-hour day, with the option of sitting and standing at will, and also had the following non-exertional impairments.  (Tr. 440).  He: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb stairs; (3) could have no exposure to dust, fumes, smoke, hazardous chemicals, or noxious gases; (3) would have a "seriously limited but not precluded" ability to deal with the public or understand, remember, and carry out complex instructions; and (4) had a "limited but satisfactory" ability to deal with work stresses, interact with supervisors, and understand, remember, and carry out detailed instructions.  (Id., cf. Tr. 101).[1]

---

[1]The ALJ incorrectly stated in his decision that he asked a vocational expert (VE) a hypothetical question containing the residual functional capacity set out in his decision (Tr. 442), but the hearing transcript shows significant differences, including the option of sitting and standing at 30 minute intervals rather than "at will," as well as different mental factors  (Tr. 988).  The error would probably be harmless given that the same set of factors was found to permit a significant number of jobs in the final, 2001 decision, although, in the meantime, the plaintiff had turned 50 years old on February 18, 1952 (Tr. 960), an adverse factor which could conceivably have a vocational impact.

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

A review of the new evidence shows that the defendant still has not properly rebutted the opinion of the treating source, Dr. Baker, which was the sole reason for the court's prior remand.  Dr. Baker, who had treated the plaintiff since May, 2000, opined that the plaintiff's coal worker's pneumoconiosis and bronchial asthma with symptoms of shortness of breath, chest tightness, wheezing, edema, episodic acute asthma, fatigue, palpitations, and coughing would interfere "often" with his attention and concentration as well as cause a limitation in his ability to deal with stress.  (Tr. 352-3).  The plaintiff would be capable of less than full-time sitting, standing, and walking, could occasionally lift less than 10 pounds, and needed to avoid all exposure to extreme cold, heat, humidity, chemicals, solvents/cleaners, soldering fluxes, smoke, fumes, dust, and odors.  (Tr. 354-5).  As the court previously noted (Tr. 528), a subsequent physician, Dr. Valentine Simpao, expressed only a vague opinion as to the plaintiff's impairments, although he did state that the plaintiff did not have the respiratory capacity to perform the work of a coal miner or comparable work in a dust-free environment (Tr. 359, 773, 363, 778).

The new evidence cited by the ALJ as rebutting the treating physician's opinion consisted of a one-time examination by Dr. Jason Fleming, whose medical specialty does not appear in the court transcript.  Dr. Fleming's examination showed decreased lung sounds throughout with "end expiratory wheezes," and noted that Mr. Hoskins had moderate to severe difficulty getting on and off the examination

table.  (Tr. 852).  He reviewed x-rays and a pulmonary function study which had apparently been conducted by Dr. Simpao, showing category 2/3 pneumoconiosis and mild obstructive airways disease, and concluded that there was physical evidence for "moderate restriction" in the plaintiff's tolerance for lifting, carrying, walking, climbing, and crawling, while no limitation in certain other postural activities was found.  (Tr. 853-4).  Although the "moderate" limitations were said to be due both to pneumoconiosis and low back pain/degenerative arthritis, Dr. Fleming did not specifically address environmental limitations.

A state agency physician, Dr. C. Hernandez, prepared a Physical Residual Functional Capacity Assessment form on January 10, 2005, in which he affirmed a prior, identical form prepared by a state agency employee who was not, as far as can be determined, an acceptable medical source under 20 C.F.R. Section 416.913.  (Tr. 922-37).  Dr. Hernandez gave no details as to how he arrived at his conclusions, but the other state agency employee appeared to rely completely on Dr. Fleming's examination; nothing was said about the treating physician's opinion.  (Tr. 923-4, 927).  Therefore, it is questionable whether the sources considered the opinion of Dr. Baker which had prompted the remand, and, in any event, their specific restrictions included a need to avoid all exposure to fumes, odors, dust, gases, poor ventilation, and hazards such as machinery and heights, and a need to avoid concentrated exposure to extreme cold, extreme heat, and vibration.  (Tr. 934).  Not all these factors were included in the ALJ's functional capacity finding, and Social Security Ruling 85-15 specifies that such restrictions can have a

considerable impact on the ability to work "because very few job environments are entirely free of irritants, pollutants, and other potentially damaging conditions." SSR 85-15, p. 8.[2]

For all these reasons, the administrative compliance with the court's remand order was inadequate.

There are additional problems with the evaluation of the mental factors.  The plaintiff had received treatment for several years from a Comprehensive Care Center (CCC), which included antidepressant and sedative medications.  (E.g., Tr. 281-9, 806-10). He was given a diagnosis of panic disorder with agoraphobia, with a recent Global Assessment of Functioning (GAF) score of 60.  (Tr. 944).  A GAF score of 60 reflects "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning."  Diagnostic and Statistical Manual Of Mental Disorders (4th Edition-Text Revision), p. 34.  No more specific restrictions were given by the treating sources.  A consultative psychiatric evaluation was conducted by Dr. Syed Raza on September 11, 2004, and also produced a diagnosis of panic disorder with agoraphobia.  (Tr. 849).  Dr. Raza assigned a slightly higher GAF score of 65, which was noted by the ALJ (Tr. 440), but the psychiatrist also stated

---

[2]The ALJ cited  an internal inconsistency in Dr. Baker's functional capacity assessment as a reason for discounting it.  The physician initially indicated that Mr. Hoskins could sit "more than two hours" at one time, but than indicated that he could sit "about two hours" total in an eight-hour day.  (Tr. 353-4).  In either case, the plaintiff is limited to less than full-time sitting, standing, and walking, and apparently no attempt was made to recontact the treating source to resolve the ambiguity. 20 C.F.R. Section 416.912(e) .

06-350  Hoskins

that Mr. Hoskins would have  "poor" coping skills to respond to normal pressures (Tr. 849).  The more specific restriction was not discussed by the ALJ, and not noted by state agency psychologists who reviewed the record subsequently.  (Tr. 883-5, 902-4).  The ALJ also emphasized Dr. Raza's statement that the CCC notes indicated a significant clinical improvement (Tr. 850), but this is not consistent with the fact that the plaintiff was given a GAF of 60 in February, 2002 as well as in October, 2004.  (Tr. 284, 944).

The decision will be remanded for further consideration of the factors outlined.

This the 19th day of June, 2007.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**

9